IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

WAYNE JOHNSON FOR CONGRESS,  &ast;
INC. and WAYNE JOHNSON,

                              &ast;

    Plaintiffs,

                              &ast;

vs.

                              &ast;      CASE NO. 4:22-CV-118 (CDL)
JEREMY C. HUNT, individually
and d/b/a Jeremy for Georgia,  &ast;
FOX NEWS NETWORK, LLC, and
BRIAN M. KILMEADE,  &ast;

    Defendants.  &ast;

_____

O R D E R

Wayne Johnson ran for Congress during the 2022 election cycle. His catchy campaign jingle, "stop the stupid in Washington," covered south Georgia's Second Congressional District like the dew.[1]  But it was not enough.  He was unable to muster enough votes to even make it into the Republican primary runoff election. Instead of accepting his defeat graciously, he seeks to recover speculative lost campaign contributions from one of his Republican primary opponents, Jeremy C. Hunt, the Fox News Network, and one of its on-air personalities, Brian M. Kilmeade.  He alleges that they engaged in a racketeering mail and wire fraud scheme to unlawfully promote Hunt's candidacy.  In today's "stop the steal"

_____

[1] Wayne Johnson for United States Congress, *Stop the Stupid in Washington Wayne Johnson*, YouTube (Apr. 21, 2022), https://www.youtube.com/watch?v=LbMpAcBbpPk.

era, where litigious losing politicians seem to have as many
lawyers on the campaign team as they do media consultants, one
perhaps should not be surprised by the present lawsuit.[2]
Notwithstanding the general emergence of political campaign
grievance litigation, Plaintiffs' specific complaint here is not
plausible.  For that reason, it must be dismissed.  Defendants'
motions to dismiss (ECF Nos. 4 & 16) are accordingly granted.  And
because Plaintiffs' complaint cannot be fixed, Plaintiffs' motion
for leave to amend (ECF No. 20) is denied.

MOTION TO DISMISS STANDARD

    "To survive a motion to dismiss" under Federal Rule of Civil
Procedure 12(b)(6), "a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).   The complaint must include sufficient factual
allegations "to raise a right to relief above the speculative
level."  *Twombly*, 550 U.S. at 555.  In other words, the factual
allegations must "raise a reasonable expectation that discovery
will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  But
"Rule 12(b)(6) does not permit dismissal of a well-pleaded
complaint simply because 'it strikes a savvy judge that actual

---

[2] "Stop the Steal" became the slogan for many Donald Trump supporters
who believed his presidential reelection loss to Joe Biden was rigged.

proof of those facts is improbable.'"   *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

ALLEGATIONS

In deciding the pending motions to dismiss, the Court must accept as true Plaintiffs' "factual" allegations.  The Court of course is not required to accept Plaintiffs' legal conclusions, particularly when the facts do not "plausibly" support the claim for relief.  Plaintiffs allege the following in support of their claims.

Johnson and Hunt each ran in the 2022 Republican primary election for Georgia's Second Congressional District.  On January 13, 2022, Hunt declared his candidacy on a Fox News program hosted by Kilmeade. Defs.' Notice of Removal Ex. A, Lower Court Pleadings ¶ 51, ECF No. 1-1 [hereinafter "Compl."].   During the primary campaign, Hunt appeared on Fox News twelve times.  *Id.* ¶ 59.  He coordinated his appearances with Kilmeade.   *Id.* ¶¶ 111, 115. During those appearances, Hunt often spoke on national security matters, although his specific experience in that area was limited to his status as a West Point graduate and former Army Captain. *Id.* ¶ 7.  These appearances provided Hunt with the opportunity to raise campaign contributions from Fox News viewers.  *Id.* ¶¶ 107, 112.  Fox News did not provide Hunt's Republican primary opponents, including Johnson, equal airtime.  *Id.* ¶ 33.

During those appearances, Defendants—in an attempt to connect Hunt to the Second Congressional District, which includes part of Columbus, Georgia—represented that Hunt was a "native of Columbus" and a "Columbus Army Veteran," although he grew up in Atlanta, never lived in Columbus before running for Congress, and only briefly trained at Fort Benning. *Id.* ¶¶ 28, 123-128.  Plaintiffs also complain that Fox News frequently described Hunt as a "Congressional Candidate," apparently suggesting that they purposefully concealed the existence of the contested Republican primary. *Id.* ¶¶ 61, 74, 81-82, 84-87, 90-91, 97.  By doing so, they unfairly ignored the other primary candidates, including Johnson.  According to Plaintiffs, this scheme to promote Hunt using exaggerated credentials, misleading representations about his residency, and not telling the loyal Fox News viewers about the Republican alternatives was designed to "bypass[] and 'hoodwink[]' the voters in the Second Congressional District of Georgia, all to enrich Defendant Hunt." *Id.* ¶ 1.  This alleged "hoodwinking" ultimately did not deliver victory for Hunt.  While he made it into a runoff with another Republican candidate, he lost the Republican runoff election.

Plaintiffs originally filed this action in the Superior Court of Muscogee County, Georgia, alleging claims under the federal and Georgia Racketeer Influenced and Corrupt Organizations statutes ("RICO"), 18 U.S.C. § 1962(c); O.C.G.A. § 16-14-1 *et seq.*

Defendants then removed the action to this Court.  The Court has jurisdiction based on federal question jurisdiction.

DISCUSSION

Defendants move to dismiss this RICO action pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to state claims upon which relief may be granted.  Although Defendants make several alternative arguments in support of their motions to dismiss, the Court finds it unnecessary to address every ground for dismissal.  As explained in the remainder of this order, the Court finds that Defendants' alleged conduct does not plausibly support the conclusion that Defendants engaged in wire and mail fraud that resulted in compensable damages to Plaintiffs.  This finding is enough to authorize dismissal of Plaintiffs' complaint.

To avoid dismissal of their RICO claims, Plaintiffs' complaint must plausibly allege "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020); *see also Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342 (11th Cir. 2017) (stating that the elements for a Georgia RICO claim are essentially the same as those for a federal claim).  Failure to adequately plead any of these elements

requires the Court to dismiss the complaint for failure to state a claim. *Cisneros*, 972 F.3d at 1211; *Feldman*, 849 F.3d at 1342.

Here, the two alleged "predicate acts" are wire and mail fraud. The alleged "injury" appears to be lost potential campaign contributions and/or injury caused by Hunt receiving more campaign contributions than he would have received absent Defendants' alleged racketeering conduct. Distilled to its essence, Plaintiffs' claim rests upon the conclusion that the exaggeration of Hunt's national security credentials, the misleading characterization of his connection to the district, and the concealment of the contested nature of the Republican primary amount to actionable fraud sufficient to support a RICO claim. Pretermitting whether Plaintiffs' complaint sufficiently alleges a "pattern" of racketeering activity, which is doubtful, these allegations don't plausibly allege the two predicate acts of wire and mail fraud. And they certainly don't support a claim that this alleged fraudulent conduct resulted in compensable damages to Plaintiffs. Plaintiffs' attempt to convert a grievance about unequal airtime on Fox News into unlawful racketeering is unpersuasive.

Plaintiffs don't even allege that the fraudulent misrepresentations and concealment were directed at them. They claim that they knew that Defendants were exaggerating Hunt's national security experience and misrepresenting his connections

to the district.  They were also painfully aware that Defendants concealed the fact that the Republican primary was contested. Thus, they must concede that they could not have possibly relied to their detriment on the alleged fraudulent conduct.  Instead, they creatively weave an argument that the misrepresentations were made to Fox News viewers, who were potential contributors to their campaign, and Plaintiffs thus lost the opportunity to collect campaign contributions from those viewers and/or their opponent received more contributions than he otherwise would have received absent the alleged fraud.  While this argument addresses the third-party nature of the alleged misrepresentations, it still does not adequately explain how the allege misrepresentations and concealment rise to the level of actionable fraud regardless of to whom they were directed.

Hunt was known to be campaigning for Congress.  He graduated from West Point and had served as a captain in the United States Army.  He provided opinions related to national security.  He said he lived in the district and had been stationed at a military base within the district, while not revealing that his connection to the district may have opportunistically coincided with his decision to run for Congress.  All these issues could have been (and likely were) raised by his opponents, including Plaintiffs, during the campaign.  And it is preposterous to suggest that the failure to volunteer that the primary was contested amounts to

7

actionable fraudulent concealment.  The Fox News viewers certainly had the opportunity to discover the "truth" with the exercise of slight diligence.  Plaintiffs have failed to plausibly allege mail and wire fraud.

The Court acknowledges that under some circumstances misrepresentations to a third party could be actionable.  *See, e.g., Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 657–58 (2008).  But those circumstances are not present here.  First, as explained previously, the misrepresentations and concealment here do not rise to the level of actionable fraud.  Furthermore, if they did, there is no resulting injury to Plaintiffs.  Plaintiffs' reliance upon *Bridge* is misplaced.  In *Bridge*, a county tax lien auction broke ties among bidders on a "rotational basis," which created a "perverse incentive" for bidders to also "send agents to bid on their behalf [to] obtain a disproportionate share of liens." 553 U.S. at 643.  To prevent this conduct, the county prohibited bidding agents and required bidders to submit affidavits affirming that they did not use such agents.  *Id.*  The *Bridge* plaintiffs alleged that the defendants submitted "false attestations of compliance" with that county rule, resulting in the defendants receiving a disproportionate share of liens.  *Id.* at 648.

The *Bridge* Court concluded that the plaintiffs established that the *county's* reliance on the defendants' fraudulent statements denied the plaintiffs "valuable liens they *otherwise*

8

*would have been awarded*."   *Id.* at 649, 658 (emphasis added) (further explaining that "no independent factors" accounted for the plaintiffs' injury); *see Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 14 (2010) (stating that the "zero-sum nature of the auction" in *Bridge* made the plaintiffs' third-party reliance theory of causation "straightforward").   Thus, given *Bridge*'s unique facts, it was clear that third-party reliance on the misrepresentations directly resulted in the plaintiffs' injuries.

Here, Plaintiffs seek "an award equaling the contributions made to Defendant Hunt that can be directly tied to donations made as a result of" the alleged racketeering scheme.[3]  Compl. ¶ 149. Unlike in *Bridge*, however, numerous independent factors could account for Fox News viewers' decisions to support Hunt over his opponents.  It is not plausible that Plaintiffs would have received those donations but for the alleged misrepresentations.  Nor were those donations zero-sum: donors could have donated to multiple candidates.  Furthermore, although it has been observed that "money is the mother's milk of politics,"[4] it is speculation to suggest

---

[3] Plaintiffs also seek "an award equaling the fair market value of the air time provided to Defendant Hunt."  Compl. ¶ 149. But Plaintiffs may not recover these damages because, as Plaintiffs concede, giving Hunt unequal airtime does not constitute a predicate act, so that injury did not directly flow from such an act.  Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss 7, 14, ECF No. 19.

[4] The origin of this now relatively common phrase has been attributed to a former California legislator.  *See Now Is the Time for All Good Men . . .*, TIME, Jan. 5, 1968, at 44 (quoting California politician Jesse Unruh), https://time.com/vault/issue/1968-01-05/page/50/.

that any donations to Hunt that could be directly tied to his appearances on Fox News led to compensable injury to Plaintiffs. Quite frankly, from the election results, it appears that Plaintiff Johnson would have lost the primary election campaign anyway. But aside from this political prognostication, any such conclusion, one way or the other, is entirely speculative. Because Plaintiffs have not plausibly alleged that third-party reliance on Defendants' alleged misrepresentations directly led to their injuries, Plaintiffs have failed to state a RICO claim.

In summary, Plaintiffs' factual allegations do not plausibly support the conclusion that Defendants' engaged in the RICO predicate acts of wire and mail fraud. Nor do they support the conclusion that Plaintiffs were injured by such conduct. Accordingly, Plaintiffs' complaint fails to state a claim upon which relief may be granted and must be dismissed. Because these deficiencies in Plaintiffs' complaint are not fixable, allowing Plaintiffs to amend their complaint would be futile. *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014). Accordingly, their motion to amend is denied.

CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss (ECF Nos. 4 & 16) and denies Plaintiffs' motion to amend (ECF No. 20).

IT IS SO ORDERED, this 3rd day of February, 2023.

                                S/Clay D. Land
                                ─────────────────────────
                                CLAY D. LAND
                                U.S. DISTRICT COURT JUDGE
                                MIDDLE DISTRICT OF GEORGIA